JOURNAL ENTRY and OPINION
Defendant-appellant Sarah Murphy appeals from her convictions for felonious assault, a second degree felony, in violation of R.C. 2903.11, and domestic violence, a first degree misdemeanor, in violation of R.C.2919.25. She asserts four assignments of error, as follows:
 I. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION, WHEN COUNSEL FAILED TO DISUADE [SIC] APPELLANT FROM WITHDRAWING HER PLEA AND FAILED TO ADVISE APPELLANT OF THE LIKELIHOOD OF HER CONVICTION AT TRIAL.
 II. THE TRIAL COURT COMMITTED [SIC] PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY ON THE INFERIOR CHARGE OF AGGRAVATED ASSAULT.
 III. APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 IV. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION, DUE TO THE CUMULATIVE ERRORS OF DEFENSE COUNSEL AT TRIAL.
We find no error in the proceedings below and affirm the appellant's convictions.
 PROCEDURAL HISTORY
Appellant was charged in a two count indictment filed September 8, 2000. Count one charged that she "did knowingly cause serious physical harm to Gregory Medougalf [sic] and knowingly did cause or attempt to cause physical harm to Gregory Medougalf [sic] by means of a deadly weapon or dangerous ordnance, to-wit: box-cutter knife," in violation of R.C. 2903.11. Count two alleged that appellant "knowingly caused or attempted to cause physical harm to Gregory Medougalf [sic]," in violation of R.C. 2919.25.
On the day appellant was scheduled for trial, appellant informed the court that she wished to enter a plea of guilty to an amended charge of attempted felonious assault. However, the court allowed her to withdraw that plea approximately one month later and the case then proceeded to trial on the original charges.
In the state's case in chief, the jury heard the testimony of the victim, Gregory McDougall, his mother, Hilda Gilmer, and police detective Anthony Small. McDougall testified that he and appellant are the parents of a two-year-old daughter. On May 29, 2000, he attended a party at his aunt's house. Appellant was also there. Appellant and McDougall argued briefly, and McDougall left the room.
McDougall testified that he and appellant left the party at 9:30 or 10:00 p.m. with McDougall's cousin, Michael Shanklin, and Shanklin's girlfriend, "Shorty." They all went to McDougall's house. McDougall said he was tired after drinking earlier that evening and wanted to go to bed, but Shanklin and his girlfriend were arguing and appellant was using the telephone. He stepped on the telephone to hang it up. He said appellant later told him that he had stepped on her fingers, although McDougall claimed he did not know that at the time.
Appellant punched McDougall twice in the jaw. McDougall grabbed her, threw her down, and held her there. Appellant tried to bite McDougall, and he let her go. She then cut McDougall's face with a box-cutter. He reached for the door, and she cut his arm. McDougall backed away from appellant and fell off the porch. His leg was cut, though he was not sure how. He got up and went inside the house; appellant followed. He said he was afraid she might kill him.
McDougall went upstairs and into a bathroom to look at his wounds. As he came out, appellant tried to hit him with an iron. McDougall's parents then spoke to appellant and she went downstairs. The police arrived a few minutes later. McDougall was taken to a hospital by ambulance, where he was given thirteen stitches on his face, six in the arm, and nine in the leg.
Hilda Gilmer, McDougall's mother, testified that on May 29, 2000, she went to her sister's party for about an hour then returned home. She was watching television upstairs at 10:30 or 11:00 p.m. when she heard an argument. She went downstairs and saw appellant and McDougall "arguing and shoving" on the porch. She did not observe any weapons, although the porch was not lighted. She told them to "cut it out," then called to her husband to call the police.
Gilmer asked appellant to leave, but she did not. Gilmer did not see either appellant or McDougall strike one another.
Detective Small testified that he took a statement from appellant by telephone. She said only that she and her ex-boyfriend were involved in an altercation at his home. McDougall told Small that the relationship between appellant and him was "kind of hostile at the time." Small identified a box-cutter he received from the officers involved in the case.
The court overruled the appellant's motion for acquittal, and appellant then testified in her own behalf. Appellant testified that she was invited to McDougall's aunt's house on May 29, 2000. The aunt, Lillian Shanklin, asked if appellant needed anything for the baby, and appellant said she did. Shanklin then went to McDougall and asked him why he didn't have a job and support his daughter, and McDougall became upset with appellant.
Appellant testified that she left the party to go to McDougall's house because McDougall's mother had said she would watch the baby. Once she got there, she called her new boyfriend to pick her up. McDougall asked to whom she was talking and when she told him, he stomped on her hand, which was on the base of the telephone. Appellant said she "smacked" McDougall in response. She told him that she was hitting him because he had stepped on her. Appellant said she did not punch McDougall.
According to appellant, McDougall picked her up by her shirt and threw her on the porch. He then "jumped on top of [her] and he started like punching [her] with his fist." She claimed the contents of her purse spilled out onto the porch. She saw the box-cutter and grabbed it. She said she tried to get up and escape, but could not.
She swung the box-cutter at him twice. McDougall then got up and started kicking at her. She swung the cutter at his leg. He then went around (not in) the house, saying he was going to get a gun and was going to kill her.
Appellant claimed she went into the house to retrieve her daughter. McDougall came in behind her. Appellant said she grabbed an iron and told McDougall to stay away from her. The police then arrived. She handed the box-cutter to a police officer and told him she had been defending herself.
The court instructed the jury on felonious assault, self-defense, and domestic violence. The jury found the appellant guilty on both charges, and the court immediately proceeded to sentence her to the minimum term of imprisonment of two years on the felonious assault charge, and to a concurrent term of six months imprisonment on count two.
 LAW AND ANALYSIS
A. Effective Assistance of Counsel.
The first and fourth assignments of error both charge that the appellant received ineffective assistance of counsel, so we will address those assignments together. Appellant claims that her attorney's representation of her was inadequate because he failed to dissuade her from withdrawing her guilty plea and committed numerous errors at trial.
The test for determining whether counsel was constitutionally ineffective is essentially the same under both Ohio and federal law:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687; see, also, State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
The court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, supra, at 690.
 A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
Strickland, supra; see, also, State v. Smith (1985), 17 Ohio St.3d 98 . The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, 42 Ohio St.3d at paragraph three of the syllabus. The record of this case with regard to trial counsel's actions fails to demonstrate his performance fell below an objective standard of reasonableness.
There is no evidence of counsel's advice to appellant during plea negotiations. Nevertheless, the record discloses that the court fully informed appellant of the benefits of entering a guilty plea to a lesser charge. On two occasions, the court advised appellant that the second degree felony with which she was charged carried with it a presumption of imprisonment, but that no such presumption applied to the lesser charges to which the state offered to allow appellant to plead. The court also clearly informed appellant that a plea to one of those charges would involve a shorter prison term if prison was imposed. Knowing all this, appellant voluntarily chose not to enter a plea and to proceed to trial.
Counsel's role was to assist appellant, not to make decisions for her. That she now believes she made a poor choice by exercising her constitutional right to a trial by jury cannot be blamed on her attorney. Therefore, the first assignment of error is overruled.
Appellant has not identified the specific acts or omissions of counsel at trial that she alleges not to have been the result of reasonable professional judgment, nor did she show how she was prejudiced by them. She argues, variously, that
 (a) counsel failed to object to "clearly erroneous hearsay rulings." However, appellant does not identify the rulings in the record or how she was prejudiced by them.
 (b) counsel adopted poor trial strategies by referring to a recorded conversation between himself and the victim in opening statements which was not introduced into evidence. The state also referred to the recorded telephone conversation in its opening statement and in its examination of Mr. McDougall, before appellant's counsel spoke. We will not second guess counsel's trial strategy in responding to the state's allusion to unintroduced evidence. Moreover, because both parties referred to the recorded statement but neither introduced it, there is no reason to believe the jury would blame the defendant rather than the state. Therefore, appellant has failed to show how she was prejudiced by any error.
 (c) failing to mount a meaningful self-defense claim involving the prior history of abuse between McDougall and appellant. Counsel did present evidence that appellant acted in self defense and the court instructed the jury on that issue. Counsel's decision about the evidence he seeks to introduce is a matter of trial strategy which we will not second-guess.
 (d) "failing to request a jury instruction and failing to argue the charge of aggravated assault." Again, this is a matter of trial strategy which we will not second guess. State v. Griffie (1996), 74 Ohio St.3d 332.
 (e) openly admitting his unpreparedness at final argument. Counsel told the jury that he had prepared a final argument on a legal pad which had been removed from counsel's table. How counsel chose to deal with the loss of his notes immediately before delivering his argument is also a matter of trial strategy which we will not second guess.
 (f) failing to properly rest his case in chief on the record. Again, appellant has not shown how she was prejudiced by this alleged error.
Therefore, the fourth assignment of error is also overruled.
B. Jury Instructions.
Appellant's second assignment of error claims the court plainly erred by failing to instruct the jury on aggravated assault, as an offense of inferior degree to the felonious assault charge. Aggravated assault is defined by R.C. 2903.12(A) as follows:
 No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
(1) Cause serious physical harm to another * * *;
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *.
Aggravated assault is an offense of inferior degree to felonious assault. Thus,
 In a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation (such that a jury could both reasonably acquit defendant of felonious assault and convict defendant of aggravated assault), an instruction on aggravated assault (as a different degree of felonious assault) must be given.
State v. Deem (1988), 40 Ohio St.3d 205.
A thorough review of the record shows that appellant did not present sufficient evidence of serious provocation. Appellant concedes that her testimony that McDougall stepped on her hand was "presumably insufficient to warrant deadly force." She argues that the fact that McDougall threw her down and pinned her was sufficient. However, neither appellant's nor McDougall's version of the events that night supports this argument. If we accept McDougall's version of events, he was attempting to restrain his attacker, a defensive gesture and not a "provocation." On the other hand, appellant's own testimony that she grabbed the box-cutter todefend herself did not demonstrate that she acted "under the influence of sudden passion or in a sudden fit of rage." Therefore, the evidence did not support an instruction on aggravated assault. It follows that the court did not err in failing to charge the jury on that offense.
C. Manifest Weight of the Evidence.
Finally, appellant urges that her convictions contravene the manifest weight of the evidence. In evaluating the manifest weight of the evidence, this court must review the entire record, weigh the testimony and other evidence, and determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin
(1983), 20 Ohio App.3d 172, 175 (cited with approval in State v.Thompkins [1997], 78 Ohio St.3d 380, 387).
Appellant argues that the court's failure to charge the jury on aggravated assault left the jury with no choice but to convict her for the more serious offense of felonious assault. In other words, "[t]he jury `lost its way' because it was handed the wrong map." We disagree. As noted above, the evidence did not support a charge of aggravated assault. Appellant's own testimony even supported the conclusion that she cut McDougall with a box-cutter knife, and hence "cause[d] * * * physical harm to another * * * by means of a deadly weapon." Therefore, we cannot say that the jury lost its way.
Accordingly, we affirm.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and ANN DYKE, J., CONCUR.